Evans, J.
dissenting. I do not concur in the opinion of a majority of the court. I do not mean to enter into a discussion of all the principles involved in the case, but to state, very concisely, my views. About the great and leading principles of the law of common carriers, not much difference of opinion will be found to exist. The difficulty is in the application, and much of that arises from confusion of ideas, as to what is meant by the act of God. By it, I understand, physical causes, as distinguished from human agency, such as winds, waves, lightnings, rocks and shoals. If a loss happens in consequence of any of these causes, the carrier is excused; but this is to be taken subject to the limitation, that proper prudence and skill has been exercised to avoid the effect of these physical causes. Thus, if a vessel has been lost in a storm, the carrier is excused ; but if he puts to sea from a safe harbor during the gale, or *210 at the instant of its approach, I apprehend he would be liable; so, also, if a vessel run on a rock or shoal and is lost, the carrier is excused, but not if the rock or shoal was known and could have been avoided. The error in these cases seems to me to be this, that the loss is referred to the rashness and ignorance of the carrier, as its proximate or immediate cause, when it should be referred to the storm or the rock; and the rashness or ignorance of the carrier, as facts, which deprive him of the defence which he would otherwise have, that the injury was occasioned by the act of God. To apply these principles to the case under consideration — the loss of the Harvest was occasioned by running on a shoal. Here the shoal was a physical agent, and as such would excuse the carrier, but then if he ran her upon the shoal from ignorance, rashness, or imprudence, he is thereby deprived of his excuse that the loss was occasioned by the act of God. If the shoal had changed, and not the buoy, no doubt the carrier would have been excused, because this fact being unknown, there was an entire absence of any of those circumstances of ignorance, rashness or folly, which would charge the carrier, notwithstanding the immediate cause of the loss was what is generally called the act of God.
Now it does seem to me, that what shall amount to such degree of ignorance, unskilfulness or folly, as shall deprive the carrier of such excuse, must, of necessity, be determined by the jury. The law cannot prescribe it. The location of any thing concealed under water, as this shoal was, can only be known by its relative position to other objects. Among the visible objects which indicate where the shoal was not, was the buoy, set there as a guide to the mariner. It is said the buoy had shifted before, and was, therefore, no certain guide, but Marsh, the pilot, said it had never before drifted so much as would prevent him from taking it as a guide, under the circumstances described by the captain of the Harvest. I cannot distinguish between such an artificial object and a natural one. If the channel had been indicated, by its relative position to a visible sand bank or island, the position of which had been changed, as was that of the buoy, by the violence of the storm, I should suppose the carrier in such case could hardly be held liable,
*211 The buoy was an object placed by the government to indicate the channel. It was moored as securely as human skill could secure it in its place; it had yielded to the violence of the tempest, and so also might a sand bar or sand island, and I can see no reason for making a distinction between the two cases. Unless, therefore, this court is prepared to say, that the captain of the Harvest was bound to remain at sea until the weather was so fair that he could see the light house and other objects, by means of which he could have ascertained that the buoy had changed its position, and no longer indicated where the channel was, as it formerly did, the verdict of the jury should stand.